**IN THE UNITED STATES DISTRICT COURT
FOR THENORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRINITY SOBER LIVING, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:19-cv-7321 |
| VILLAGE OF HINSDALE, A municipal corporation, | ) ) ) ) | Judge: Steven C. Seeger Magistrate Judge: Jeffrey Cole |
| Defendant. | ) ) | |

**AMENDED COMPLAINT**

NOW COMES Plaintiff, TRINITY SOBER LIVING, LLC, an Illinois limited liability company, ("Plaintiff" or "TSL") by and through its undersigned attorneys for its amended complaint against Defendant, VILLAGE OF HINSDALE, an Illinois municipal corporation ("Defendant") alleges as follows:

**PRELIMINARY STATEMENT**

This matter arises pursuant to the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* ("FHA"); and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Plaintiff, Trinity Sober Living LLC, seeks damages and injunctive relief as redress for: (1) the disparate impact visited upon them due to the acts and decisions of the Defendant and its subsidiary or affiliate organizations; (2) the affirmative disability-based discrimination manifested in Defendant's acts and decisions; and (3) Defendant's discriminatory refusal and denial to provide Plaintiff a reasonable accommodation in keeping with Federal anti-discrimination laws.

The aforementioned denials of Plaintiff's applications now threaten residents of the Plaintiff -- who are disabled pursuant to the FHA and ADA -- with impending eviction based on discriminatory means. To prevent such a result, Plaintiff hereby asks this Honorable Court for declaratory and injunctive relief to halt the Defendant's discrimination against them on the basis of handicap or disability in violation of the FHA and ADA, respectively. Additionally, Plaintiff seeks monetary damages, costs, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331, 1343; 42 U.S.C. §3613; and 42 U.S.C. §12133.

2. Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division as all acts complained of occurred within this District.

## PARTIES

3. Plaintiff is an Illinois limited liability company, with a principal place of business in Hinsdale, Illinois. It provides affordable housing and supports individuals with disabilities including those who are recovering from substance abuse and/or alcoholism located at 111 N. Grant Hinsdale, Illinois (hereinafter referred to herein as the "House").

4. The Defendant is a political subdivision of the State of Illinois. The Defendant is responsible for the acts of its agents and employees as well as the enactment, enforcement, and application of the Village Code ("Code") of the Village of Hinsdale.

## STATUTORY AND REGULATORY FRAMEWORK

5. In 1988, Congress amended the FHA to extend the guarantee of fair housing to handicapped individuals. Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the FHA.

6.     Under the FHA, a person is subject to a "handicap" if she or he has a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)." 24 C.F.R. § 100.201. The ADA uses similar terminology to define a "disability." *See, e.g., Tsombandis v. West Haven Fire Dept.*, 352 F.3d 565 (2d. Cir. 2003).

7.     Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in, or intending to reside in, that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1).

8.     The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, based in a handicap of such person residing in or intending to reside in that dwelling after it is sold, rented, or otherwise made available. 42 U.S.C. § 3604(f)(2).

9.     The federal regulations implementing the FHA specifically define as discriminatory activity and prohibit the provision of municipal services in a different manner as based on a handicap. 24 C.F.R. § 100.70(d)(4).

10.    The federal regulations implementing the FHA further make it unlawful "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development" because of a handicap. 24 C.F.R. § 100.70(a).

11. The FHA also contains an Ant-Retaliation provision that makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, … any right granted or protected by [the FHA]. 42 U.S.C. § 3617.

12. The ADA requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any municipal entity. 42 U.S.C. § 12132.

13. The federal regulations implementing the ADA prohibit a public entity from administering a licensing program or establishing certain requirements for activities of a licensee in a manner that subjects qualified disabled individuals to discrimination on the basis of their disability. 28 C.F.R. § 35.130(6).

14. The federal regulations implementing the ADA also make it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities, denying them the benefits of certain locations, or otherwise subjecting them to discrimination. 28 C.F.R. § 35.130(4)(I).

## STATEMENT OF FACTS

### A. Trinity Mission

15. Plaintiff Trinity Sober Living, LLC ("TSL") provides support to individuals who are recovering from substance abuse and alcoholism.

16. TSL's mission is to provide "[h]ope to young men that suffer from substance use disorder…through Structure, Accountability, and Support" after their rehabilitation program ends.

17. For many individuals, the leap from a structured primary treatment environment to the autonomy associated with returning to their former lives in the community can be too great without support.

18. Once treatment ends, after-care is an essential component for increased success in long-term recovery.

19. According to a 2018 study commissioned by the State of Illinois, there is an insufficient capacity of recovery homes to meet the need of Illinois citizens with Substance Use Disorder ("SUD").

20. Monitoring data estimates that nearly 45,000 people in Illinois (ages 12 and over) are engaged in SUD treatment on a given day, while estimates of recovery homes and halfway house beds in Illinois are 1,493 beds, or approximately 3% of those in treatment.

21. In response to this shortage, TSL launched a program for sober living homes for recovering alcoholics and addicts who need support transitioning from a rehabilitation program back into society.

22. TSL's sober living program provides daily structure, personal accountability, and community support needed to maintain sobriety.

**B. Trinity House**

23. In June 2019, TSL purchased a private residence at 111 N. Grant Street ("Trinity House") in the Village of Hinsdale, Illinois ("Defendant" or "the Village") for use as a sober living residence.

24. TSL designed Trinity House for individuals who recently completed a rehabilitation treatment program.

25. For these individuals, Trinity House is the last step between treatment and going home.

26. Trinity House is staffed with a 24/7 House Manager, who has nearly a decade's experience with sobriety, a Certified Alcohol & Drug Counselor (CADC), and Peer Recovery Coaches.

27. Trinity House is approximately 4,000 square foot and has six bedrooms.

28. Trinity House is intended to house 10 residents.

29. Both the inside and outside of the house are immaculate.

30. The residents clean the house every day and there is a landscaping service that maintains the home's lawn.

31. From the outside of the home, you would never know it is a sober living home.

32. This is intentional so Trinity's residents can learn to function, as sober individuals, in an actual home before they return to a household with their families.

C. **Trinity Residents**

33. All past and present Trinity House residents are individuals with the disability of Substance Use Disorder ("SUD").

34. SUD is a disease that affects a person's brain and behavior and leads to an inability to control the use of a drug or alcohol.

35. Because of their disability all past and present residents of Trinity House have difficulty caring for themselves and sustaining healthy relationships with friends and family.

36. SUD impacts Trinity House residents' decision-making processes, as well as their ability to concentrate and stay on task.

37. Even though the Trinity House residents completed a rehabilitation treatment program prior to coming to live at Trinity House, their underlying addictions substantially limit their ability to live independently in the community without suffering a relapse.

38. While treatment eventually helps to ameliorate the symptoms of SUD, the underlying disease never goes away.

39. The relapse rate for individuals with SUD is significant without structure, accountability, and support. The relapse rate after a 30-day rehabilitation program is estimated to be as high as 90% within six months following the program's end.

**D. Trinity House Program**

40. In order to combat the relapse rate, Trinity House's program relies heavily on accountability and support as well as both scheduled and random drug testing.

41. Residents must be sober before entering Trinity House. Residents come to Trinity House after completing a treatment program. They are drug tested and breathalyzed prior to coming into the home.

42. The residents live at Trinity House by choice. The residents choose to live at Trinity House because they do not want to relapse into drug or alcohol use again.

43. Trinity House residents live together as a family and make group decisions based on democratic procedures.

44. Trinity House residents are vital to each other's sobriety. They eat together, go out together, attend meetings together, and learn living tools together to help them transition out of the sober home and back into their communities.

45. The program is broken into three phases with increasing responsibility and privileges awarded to the resident in each phase.

46. Trinity House's "phase method" allows TSL to test the resident's independence and progress in a safe environment while maintaining the structure, accountability and oversight necessary to prevent relapse.

47. Each resident's schedule is highly structured and contains stringent education, therapy, employment, and daily chore requirements.

48. Privileges are rewarded, not only by seniority, but by how much the resident is contributing to the success of everyone else.

49. The success of each resident is highly dependent on community, structure, and support.

50. It is often critical that Trinity House residents who are in the early and middle stages of recovery share a bedroom with another recovering addict for mutual support and monitoring.

51. The length of each resident's stay at Trinity House is determined by the resident's continued need for supported living. Most residents stay approximately 90 days, but some residents stay up to 365 days depending on their level of need.

52. Trinity House enables the residents to engage in recovery from alcoholism and substance abuse at their own pace, which ameliorates the effects of the disease.

53. Trinity House is not an apartment or just a bed for an addict or alcoholic. It is a vital step between treatment and going back home to start living normally again. Simply put, Trinity House is a way back to life and self-sufficiency.

54. The mutual emotional support and bonding exchanged between the residents is the equivalent of the type of love and support received in a traditional family.

55. By living with nine other persons who are in recovery, the residents never have to face an alcoholic's or addict's deadliest enemy: loneliness and isolation.

56. Living in a structured, safe, and therapeutic environment is necessary to a Trinity House resident's recovery process.

### E. Critical Mass

57. Ten residents are needed to reach a critical mass necessary for the residents to achieve the therapeutic benefits of Trinity House's phasing program.

58. Further, ten residents are required to prevent isolation or loneliness. Trinity House is 4,000 square feet. Filling the home to its critical mass of ten residents mitigates the concern that any particular resident will find himself at home alone and at risk of relapse.

59. It costs TSL approximately $17,000.00 a month to run Trinity House. This sum includes the mortgage payment, taxes, insurance, internet and cable, utilities as well as the salary and benefits of Trinity House's Resident Manager and Certified Alcohol and Drug Counselor. This sum also includes some savings set aside each month for improvement projects and unexpected home expenses.

60. Each resident generates an average of $1,850.00 a month.

61. Trinity House requires the occupancy of ten residents in order to achieve financial viability.

### F. Hinsdale's Zoning Enforcement

62. The Village's Zoning Code governs zoning and land use policy in the Village of Hinsdale.

63. The current version of the Code defines "family" as follows:

"FAMILY

One or more persons related by blood, marriage, legal adoption, or guardianship, or not more than three (3) persons not so related, together with gratuitous guests and domestic servants, living together as a single housekeeping unit."

64. Soon after TSL purchased the House, the Village of Hinsdale became aware that TSL intended on operating a sober living house.

65. On July 18, 2019, Thomas K. Cauley, Jr. the President for the Village, wrote a letter to Michael Owens, the manager or TSL, telling Mr. Owens the Village received information that TSL intended on running "a facility where ten unrelated people will reside." Cauley further claimed Trinity House is not a permitted use in the Village's R-4 Single Family Zoning District in which the home is located.

66. In various communications with the Village between August 1, 2019 and August 2, 2019, the Village clarified it did not simply take issue with the number of unrelated residents at the Trinity House. Rather, the Village would not allow Trinity House to operate, regardless of the number of unrelated residents, because the Village considered the home "a commercial use."

67. The Village gave TSL until August 7, 2019 to respond to its allegations.

68. On August 7, 2019, TSL's attorney advised the Village by letter that Trinity House residents are a protected class of persons pursuant to the Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA") by virtue of being in recovery from alcoholism and drug addiction. He further advised that the Village's anticipated enforcement of its zoning code against TSL operating a '"sober house" constituted illegal discrimination under the FHA and ADA. TSL's asked the Village to grant a reasonable accommodation pursuant to the FHA and to treat TSL's use of the home as a single-family use.

69. The August 7, 2019 letter was nine pages long and contained extensive legal analysis and case citations in support of TSL's argument that Trinity House and its residents are protected under the FHA and ADA.

70. Instead of considering TSL's request for a reasonable accommodation, the Village retaliated against TSL by filing its Verified Complaint for Injunctive Relief and Ordinance Violations against TSL in the Illinois Circuit Court in DuPage County (Case No. 2019 CH 916) *the very next day*.

71. Despite being on notice of the Village's FHA and ADA violations since August 2019, the Village's complaint makes no mention of the FHA, the ADA, or TSL's request for a reasonable accommodation.

72. On October 18, 2019, the Village filed its Motion for Preliminary Injunction with this Court.

73. The Village's Motion for Preliminary Injunction again omits any reference to the FHA, the ADA, or TSL's repeated requests for a reasonable accommodation.

74. On October 31, 2019, TSL sent the Village additional information in support of its previous request for a reasonable accommodation. The Village ignored TSL's correspondence.

75. From August 2019 to June 2020, the Village pursued its frivolous lawsuit in state court and attempted to evict the Trinity House residents from their home or, at the very least, limit the number of residents who could live in the home.

76. After nearly a year and after TSL expended significant time and resource defending the frivolous suit, the Village dismissed its state lawsuit on June 2020 when it was unsuccessful in obtaining a preliminary injunction against Trinity House to limit the number of residents who could live in the home during the pendency of the state case.

77. The effect of Defendant's actions has been to prevent TSL and residents from residing at the dwelling of their choice or in any other home zoned for single family use in the Village.

11

78. Plaintiffs are aggrieved persons under 42 U.S.C. §§ 3602(d) and (I), who have been injured by Defendant's discriminatory conduct and have suffered damages, economic loss and a loss of civil rights as a result of Defendant's conduct.

79. The House is a dwelling within the meaning of § 802(b) of the FHA, 42 U.S.C. § 3602(b).

80. The effect of Defendant's actions is to deny needed housing opportunities to recovering alcoholics and substance abusers who are disabled under the FHA within the Village of Hinsdale.

81. The Village Code of the Village of Hinsdale does not have a procedure for processing requests for a reasonable accommodation in the zoning context pursuant to the FHA.

82. The effect of the conduct of the Defendant is to limit the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in any residential zoning district within the Village of Hinsdale.

83. Defendant is treating the residents of the House in a discriminatory fashion and is imposing far more stringent requirements on this group of unrelated disabled individuals than on others.

84. By classifying the premises described above as a prohibited use in residential zones in the Village, Defendant is arbitrarily and illegally making single family housing unavailable to disabled persons recovering from drugs and alcohol addiction.

85. Defendant has acted under color of the law of the State of Illinois enforcing the Code with the purpose and effect of discriminating against Plaintiff and Plaintiff's residents solely because of their handicap and disability.

86. Plaintiff's residents are living in fear of losing their home and are suffering anxiety, emotional distress, pain, setbacks in their efforts at recovery, and other irreparable harm as a result of Defendant's actions. They have no adequate remedy at law.

87. Defendant has denied Plaintiff's rights to due process of law by its arbitrary classification of the House.

88. Defendant has failed to further the objective of providing fair housing under the FHA in arbitrarily administering its Code.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Discrimination and Retaliation Under the FHA)

89. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 40 above.

90. Defendant is violating Plaintiff's rights under the FHA and its implementing regulations by:

 a. denying and otherwise making housing unavailable to Plaintiff's residents because of their disability;

 b. using the Zoning Code of the Village of Hinsdale as a pretext to exclude Plaintiff's residents because of their disability;

 c. enforcing discriminatory zoning rules and policies on Plaintiff and its residents because of their disability;

 d. interfering with the right of Plaintiff's residents to live in the dwelling of their choice;

 e. failing to make reasonable accommodations in the Code and its application to afford Plaintiff and its residents an equal opportunity to use and enjoy the House; and

13

  f. retaliating against Plaintiff because of their exercise of their legal rights under the FHA.

## SECOND CLAIM FOR RELIEF
### (Discrimination Under the ADA)

91. Plaintiff realleges and incorporates herein by reference paragraphs 1 through 42 above.

92. Plaintiff TSL is involved in the process of providing housing to people with disabilities as defined in 42 U.S.C. § 12102(2).

93. Plaintiff's residents are individuals with a disability, as defined in 42 U.S.C. § 12102(2), living at the House.

94. Defendant is a public entity, within the definition of 42 U.S.C. § 12131(1).

95. The actions of Defendant to exclude the residents of the House from single family residential zones violate Plaintiff and its residents' rights under the ADA and the regulations promulgated thereunder by:

  a. denying the individual disabled residents the opportunity to participate in or benefit from the supportive housing program TSL offers;

  b. using and administering land use ordinances with the purpose and effect of subjecting Plaintiff and its residents to discrimination based on their disability;

  c. subjecting Plaintiff and its residents to discrimination on the basis of their disability;

  d. denying disabled residents the opportunity to participate in a program in the most integrated setting appropriate to their needs in a manner discriminatory against Plaintiff and different from the opportunities presented to non-disabled individuals;

e. utilizing licensing and permit requirements to enforce the Code and deny Plaintiff's residents' enjoyment of rights, privileges, advantages, and opportunities enjoyed by non-disabled individuals in a manner that is discriminatory against Plaintiff;

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court:

1. Enter a declaratory judgment that Defendant has illegally discriminated against Plaintiff in violation of the FHA and ADA by arbitrarily and capriciously applying its Code to the occupancy of the House by groups of disabled recovering alcoholics and addicts, thereby causing a disparate impact upon Plaintiff use and enjoyment of a dwelling;

2. Provide injunctive relief restraining Defendant from discriminating against Plaintiff and interfering with Plaintiff's current operation of the House as a home for disabled recovering alcoholics and substance abusers, and/or from interfering in Plaintiff's residents' rights to reside in the House;

3. Enter a declaratory judgment stating that Plaintiff's use of the House as a "sober house" is consistent with classification of the premises as a single family dwelling, and requiring Defendant to apply all zoning, safety, building, and land use codes to Plaintiff's use of the House in the same manner as it does to all other single family dwellings;

4. Award compensatory damages;

5. Grant an award of reasonable costs and attorneys' fees; and,

6. Order such other relief as the Court deems just and proper.

**JURY DEMAND REQUESTED.**

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **ESPOSITO & STAUBUS LLP** |
| Dated: July 15, 2020 | /s/ Bradley K. Staubus |
|  | Bradley K. Staubus<br>**Esposito & Staubus LLP**<br>7055 Veterans Blvd., Unit B<br>Burr Ridge, Illinois 60527<br>Telephone: (312) 346-2766<br>Facsimile: (312) 346-3177<br>bks@eslaw500.com |
|  | /s/ Sarah Jane Hunt<br>Sarah Jane Hunt<br>Thomas E. Kennedy, III<br>**Kennedy Hunt P.C.**<br>906 Olive Street, Suite 200<br>Saint Louis, Missouri 63101<br>sarahjane@kennedyhuntlaw.com<br>tkennedy@kennedyhuntlaw.com |
|  | *Attorneys for Plaintiff* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the below-referenced counsel of record:

| | |
|---|---|
| John B. Murphey<br>Rosenthal, Murphey, Coblentz & Donahue<br>30 N. LaSalle Street, Suite 1624<br>Chicago, Illinois 60602<br>Email: JMurphey@rmcj.com | Lawrence Desideri<br>Brook Long<br>Winston & Strawn LLP<br>35 W. Wacker Drive<br>Chicago, Illinois 60601<br>Email: LDesideri@winston.com<br>Email: BLong@winston.com |

                                                             */s/ Bradley K. Staubus*