IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRINITY SOBER LIVING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 C 7321 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| VILLAGE OF HINSDALE, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | CONSOLIDATED WITH |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20 C 6959 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| VILLAGE OF HINSDALE, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On July 13, 2022, the plaintiff, United States, filed a motion to compel the defendant, Village of Hinsdale, to produce certain documents it has withheld as privileged. The United States describes the documents being withheld as containing, describing, or relating to communications between Village President Thomas Cauley and Village Counsel Lance Malina, and 2) concerning the Village's July 30, 2019 meeting with Trinity and the Village's subsequent decision to sue Trinity in state court on August 8, 2019. The documents at issue are entries nos. 7, 12, 173-177, 181-82, 190-192, 195, 200, 204, in the village of Hinsdale's privileged log. [Dkt. #112-3]. For the following reasons, the motion [Dkt. #111] is denied.

The United States tells us that this current motion was prompted by Mr. Cauley's deposition testimony on April 26, 2022. [Dkt. #112, at 11]. It adds that it "had to wait to receive and review the transcripts to determine whether a waiver of privilege had occurred." [Dkt. #112, at 11]. At that time, fact discovery was set to close on April 29, 2011 [Dkt. #112, at 11], a date the government had a role in selecting and had known about for over three months. [Dkt. ##90, 91]. As such, the government thinks that its motion is timely. That's a bit of a stretch.

As fact discovery in this three-year-old-case slowly – very slowly – wound down, by all appearances the government stirred from relative inactivity to a flurry. As of January 12, 2022, with discovery then set to close on February 28th, the parties informed the court that they planned on taking – incredibly – *twenty-one depositions*. [Dkt. #90]. They asked for – and received – a two-month extension, with fact discovery now to be completed by April 29, 2022. [Dkt. ##90, 91].

There was a status hearing on Thursday, April 28th – the day before fact discovery closed. The parties informed the court that they were incapable of meeting the deadline *they had selected* but, at that late date, they had also been unable to file a simple motion for an extension. I instructed them to file any such motion "immediately" – obviously – as discovery was ending in 24 hours. [Dkt. #100]. They did not follow those instructions and, instead, took another three business days to file a sparse, page-and-a-half motion for an "extension" *after discovery closed*. [Dkt. #101].[1] I granted it anyway as it was an agreed motion from both sides, and I set the new deadline of June 3, 2022, as the parties requested. [Dkt. #102]. In hindsight that was a mistake. In any event, discovery closed

---

[1] With discovery closed, the motion [Dkt. #101] ought to have been characterized as a motion to reopen discovery rather than a motion to extend discovery, of course. Additionally, the motion was claimed to be "the second motion in this case to extend the Court's case deadlines." [Dkt.#101, Par. 3]. But the parties had lost track. It was the third motion to extend discovery deadlines in just four months [Dkt. ## 90, 98], and only one of several motions to extend "case deadlines." [Dkt. ##60, 56, 49, 20, 12].

on June 3rd with nothing more from either side.

A week later the government, proving that titles don't count, *Illinois Graphics Co. v. Nickum*, 159 Ill.2d 469, 639 (1994), filed what it called a "Motion to *Extend* Fact Discovery Deadline for a Limited Purpose." [Dkt. #106](Emphasis supplied). That was a misrepresentation, of course, as the motion actually sought to reopen fact discovery. The government wanted fact discovery reopened for over a month – until July 15, 2022 – so that it could issue a "third-party subpoena to PNC Bank and, if necessary, re-open the deposition of third-party witness, Tim Derry." [Dkt. #106, at 6]. The defendant opposed the reopening of discovery, even for this "limited" purpose. [Dkt. #106, Par. 11]. The defendant's stance against reopening discovery in a case that began back in November 2019 was understandable, and in line with the caselaw which generally counseled against granting it. *See, generally Alight Sols. v. Thomson*, No. 20 C 3043, 2021 WL 5119111, (N.D. Ill. Nov. 3, 2021)(discussion of deadlines and collection of cases). But, I allowed the government an enormous amount of leeway, granted its motion, and reopened fact discovery. I did this, again, "for the *limited purpose* of serving a third-party subpoena and, if necessary, re-opening the deposition of a third-party witness, Tim Derry." The limited purpose of the extension, and the fact that it did not impinge on the expert discovery schedule, influenced me to grant the government's motion which, in hindsight, appears to have been an improvident decision.

At about 1 p.m. on July 13, 2022, the government filed its instant motion to compel the privileged documents regarding communications between Village President Thomas Cauley and Village Counsel Lance Malina, and concerning the Village's July 30, 2019 meeting with Trinity and subsequent decision to sue Trinity in state court. [Dkt. #11]. Obviously, the motion has nothing to do with Mr. Derry's deposition or his emails, which was the only reason discovery was reopened

after the June 3rd closure.[2] Accordingly, the motion, coming over a month after the deadline for all other fact discovery had passed, cannot be regarded as timely. *Haynes v. Alliant Food Serv., Inc.*, 93 F. App'x 71, 73–74 (7th Cir. 2004)("We review a refusal to compel additional discovery only for abuse of discretion . . . And rarely will we find an abuse of discretion when the motion to compel came after the close of discovery."); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir.2001). Parties who wait until the last minute (or beyond) to file motions to compel or seek deadline extensions (as the government has made a habit of here) are "playing with fire." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). *See also Flint v. City of Belvidere*, 791 F.3d

---

[2] About three hours later, the government filed another motion to extend fact discovery for the Derry emails and possible re-opening of the Derry deposition [Dkt. #113, Par. 3] which the defendant, again, understandably opposed. [Dkt. #113, Par.8]. Mr. Derry is a non-party in this case which, as the government describes it, is a simple one. Plaintiff Trinity opened a "sober living home" in Hinsdale, and residents like Mr. Derry – who lived next door – complained. [Dkt. #106, Pars. 3, 4]. Yet, 13,000 pages of discovery has been produced and 22 depositions, including Derry's have been taken. [Dkt. #106, Pars. 2, 4]. That's "enough discovery . . . to choke a horse." *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008). The government's July 13th motion for a new deadline failed to explain why the additional emails – on top of those Mr. Derry already produced and on top of the thousands of pages of discovery already produced – are important enough to continue discovery that concluded six weeks ago. They may be marginally relevant but, at this point, the real question is whether they are proportional to the needs of the case, especially of all the discovery already produced and all the depositions already taken.

Proportionality is a vital limitation on pretrial discovery, which courts have rightly called "a runaway train," *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 901 (7th Cir. 1981) – "a monster on the loose," *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986) – and "the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000). Proportionality, like other concepts, it is not self-defining; it requires a common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018). Indeed, Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary noted that the addition of "proportionality" to Rule 26(b) "crystalize[d] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. (emphasis added).

The government's July 13th motion for a new deadline did little or nothing to convince one that the an additional extension for an additional deposition meets the proportionality requirement. Moreover, it scuttled the expert discovery schedule it promised that had been in place since May. And, of course, the motion gave no assurances that more motions for more extensions aren't in the offing. But, again, I was lenient with the government and granted its motion in order to resolve whatever issues it was having with Mr. Derry's emails.

764, 768 (7th Cir. 2015); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 538 (7th Cir. 2011). "Federal courts do not possess infinite patience, nor are the discovery tools of litigation meant to substitute for ... diligence." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021). As the record in this case shows, I have been patient with the government to a fault, but that part of this case is over.

The only excuses the government offers for the timing of its motion are that it "had to wait to receive and review the transcripts to determine whether a waiver of privilege had occurred" and that it received Mr. Cauley's errata sheets following his review of the transcripts on July 12, 2022. [Dkt. #112, at 11]. These excuses, simply put, are nonsense. The government had the defendant's privilege log by March 3, 2022. [Dkt. #112-3, Page 48/48]. There was at least one government lawyer at the deposition questioning Mr. Cauley; and surely that lawyer was paying sufficient attention to at least get a start on this simple issue that the government did not raise for another three months. The parties had a rough transcript of Mr. Cauley's April 25, 2022 deposition the following day. [Dkt. #116, Par. 4]. That's another opportunity to get started. Audio-visual recordings were made available May 4th, and the parties had final transcripts by May 20th. [Dkt. #116, Pars. 5,6]. Again, the government did nothing – or at least not what good practice would consider appropriate.

All that is certainly frustrating, but there is another point that is somewhat troubling. The government cited to the Cauley deposition transcript it in support of its June 9th motion for a limited extension [Dkt. #106, Par. 3] and attached it as an exhibit. [Dkt. #106-1]. If, as the government now claims, it could not review the transcript until July 12th, was its motion for an extension made under false pretenses? Or, had it completed review of the transcript well before and simply dragged its feet on this current discovery motion?

5

Given the history of the case, the latter is far more likely. The government has repeatedly failed to meet deadlines that essentially have been, in whole or in part, of its own choosing. [Dkt. ## 91, 99, 102, 107]. The government made no mention of this privilege issue on three separate occasions from April 28th through June 13th. Thus Dkt. #100 stated that "[c]ounsel had no substantive issues to report on during today's hearing...."; Dkt. # 101, Par. 1(Listing remaining discovery matters, but no mention of privilege issue); Dkt. # 106 (attaching and citing Cauley transcript, but no mention of privilege issue). Its past assurances in requests for more time that no further deadlines would be affected have proven to be completely unreliable.

The government has reaped thousands of pages of discovery and hours of testimony regarding the plaintiff – a single, "sober living facility" on a residential block in a small suburb. [Dkt. #106, Pars. 2, 4]. At this point, it is delving into information on the peripheries and is leaving proportionality in the rear view window. Courts have a great deal of discretion in resolving discovery matters such as this, *see Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *In re Stericycle Sec. Litig.*, 35 F.4th 555, 571 (7th Cir. 2022); *Fields v. City of Chicago*, 981 F.3d 534, 550–51 (7th Cir. 2020); *Yost v. Carroll*, 2022 WL 3594643, at *4 (N.D. Ill. Aug. 23, 2022),[3] and that discretion has

---

[3] Discretion , it cannot be too strongly emphasized, denotes the absence of a hard and fast rule. *Langnes v. Green*, 282 U.S. 531, 541 (1931); *Pruitt v. Mote*, 2006 WL 3802822 (7th Cir. 2006); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937 (7th Cir. 1995); *United States v. Liebert*, 519 F.2d 542, 547 (3d Cir. 1975); *Rogers v. Loether*, 467 F.2d 1110, 1111–12 (7th Cir. 1972)(Stevens, J.); *Balderas v. Illinois Cent. RR Co.,* No. 20 C 1857, 2021 WL 76813, at *1 (N.D. Ill. Jan. 8, 2021). On virtually identical facts, two decision-makers can arrive at opposite conclusions, both of which can constitute appropriate exercises of discretion. *See United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008). Indeed, "the district judge's substantial discretion ... ensures inconsistency." *Johnson v. Daley*, 339 F.3d 582, 593–594 (7th Cir. 2003). *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). An abuse of discretion occurs when no reasonable person could take the view of the district court. Thus, two judges confronted with the identical records can come to opposite conclusions and for the Appellate Court to affirm both. *United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008); *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner,
(continued...)

been exercised in the government's favor. But, the time has come, after giving the government the benefit of the doubt more than once, over the defendant's objections, to say "enough is enough." *Whole Woman's Health All. v. Hill*, 937 F.3d 864, 878 (7th Cir. 2019). Accordingly, the Motion to compel [Dkt. #111] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE: 8/30/22**

---

³(...continued)
J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable....").